UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JULIAN CHIPKIN, ) | 3:24-CV-1435 (SVN) |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| BETTER PACKAGES, INC., and ) | |
| INTERTAPE POLYMER (US), INC., ) | August 12, 2025 |
| ) | |
| *Defendants*. ) | |

## RULING ON DEFENDANTS' MOTION TO DISMISS

Sarala V. Nagala, United States District Judge.

In this employment action, Plaintiff Julian Chipkin has sued his former employer, Defendant Better Packages, Inc. ("Better Packages"), and its corporate parent, Defendant Intertape Polymer (US), Inc ("Intertape"). In Counts One and Two of his complaint, Plaintiff asserts discrimination and retaliation claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Compl., ECF No. 1, ¶¶ 269–94. In Count Three, he alleges that Defendants wrongfully terminated him in retaliation for his exercise of free speech protected by the Connecticut state constitution, in violation of Conn. Gen. Stat. § 31-51q *et seq*. *Id.* ¶¶ 295–309.

Defendants have moved to dismiss the complaint in its entirety under Fed. R. Civ. P. 12(b)(6). *See* Mot. to Dismiss, ECF No. 16. Plaintiff opposes the motion only in relation to Count Three, his claim under § 31-51q, and is therefore deemed to have abandoned his ADA claims. *See* Pl.'s Opp. Mot. to Dismiss., ECF No. 17. For the reasons described herein, Defendants' motion to dismiss is GRANTED in full, although Plaintiff is afforded leave to amend with respect to his § 31-51q claim.

I.       **FACTUAL BACKGROUND**[1]

The Court accepts the following allegations in Plaintiff's complaint as true for purposes of deciding Defendants' motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff worked as a mechanical engineer at Better Packages, an affiliate of Intertape, from April 5, 2021, to July 5, 2023. ECF No. 1 ¶¶ 12–13, 264. Plaintiff was "originally mentored" by Senior Engineer Mark McCrate, and was supervised by Director of Engineering Michael Curtain. *Id.* ¶¶ 19–20. He performed his job duties well, and received positive mid-year and end-year reviews from his supervisor. *Id.* ¶¶ 21–22.

During the course of his employment, Plaintiff raised ethical concerns about business practices that led him to be "retaliated against and ostracized." *Id.* ¶ 23–25. For instance, in or around August of 2022, McCrate was preparing to give a presentation at an Operational Window Project meeting in Bardstown, Kentucky, and asked Plaintiff to gather and analyze data for the presentation. *Id.* ¶¶ 26–27. Plaintiff alleges he was provided with an "incomplete" data set that "excluded approximately 400 defective rolls of film from the 1,000 rolls of film that [Plaintiff] tested" and that the "requested analysis metric" was developed only after the data was recorded. *Id.* ¶¶ 27–29. Believing that performing the data analysis in this manner would mislead "the AirSpace team," Plaintiff declined to perform the analysis as requested, citing ethical concerns. *See id.* ¶¶ 30–42. McCrate "criticized" Plaintiff for these objections, "subjected [him] to public humiliation in front of peers during weekly meetings," and "attempted to shame [Plaintiff] by accusing him . . . of being unwilling to engage in his work." *Id.* ¶¶ 37–38, 46. Plaintiff eventually did perform the analysis despite his concerns about the methodology, but warned McCrate that he

---

[1] As the Court finds below that Plaintiff has abandoned his ADA claims, it summarizes only the asserted facts relevant to the § 31-51q retaliation claim.

should not use it for the presentation. *See id.* ¶¶ 47–48. McCrate nonetheless used the data, which "further strained his professional relationship with [Plaintiff]." *Id.* ¶¶ 49–50.

Following the presentation, McCrate's attitude towards Plaintiff "changed significantly." *Id.* ¶ 52. Among other actions Plaintiff recounts as demonstrating this change are that Curtin told Plaintiff that McCrate was "upset" with him for "not listening," that McCrate made a bet with another employee that Plaintiff would not actually construct a machine that he had volunteered to build, and that McCrate told Plaintiff that other employees had inquired about his competence as an engineer. *See id.* ¶¶ 52–61.

Plaintiff alleges that on numerous occasions between September of 2022 and June of 2023 he raised issues regarding McCrate's conduct to Curtin and then to human resources. *See id.* ¶¶ 62–68, 117–25, 161–69, 192–96, 207–34, 248–56. In September of 2022, after Plaintiff reported McCrate's conduct to Curtin, Plaintiff expressed in a mediation session "how McCrate's actions cause him work-related stress and anxiety." *Id.* ¶¶ 62–68. McCrate allegedly continued to spread rumors about Plaintiff, to humiliate him, and to "make [Plaintiff's] work life miserable." *Id.* ¶¶ 90–98, 101, 106–16. McCrate's behavior continued, and Plaintiff made additional complaints to Curtin in December of 2022, *id.* ¶ 117, in April of 2023, *id.* ¶¶ 161–67, and in May of 2023, *id.* ¶¶ 189–92. During an April 2023 meeting with Curtin, Plaintiff alleges that he "conveyed his feeling of being trapped in a situation where McCrate's behavior remained unregulated, causing considerable stress, anxiety, and highlighted the resulting detriment to [Plaintiff's] mental health." *Id.* ¶ 164. Plaintiff sought intervention from human resources in May of 2023, *id.* ¶ 193, but those efforts also failed to resolve the situation, *see id.* ¶¶ 195–251. Plaintiff told human resources that he planned to submit a formal complaint about McCrate's "harassment" to the Senior Vice President of Human Resources, and was told such a report would "trigger a third party

3

investigation." *Id.* ¶¶ 252–53.  Human resources encouraged him to follow through with the plan to report.  *Id.* ¶ 254.  Plaintiff later told human resources to anticipate his report on July 5, 2023, *id.* ¶ 257, but the complaint does not state whether the report was actually submitted.

Instead, on July 5, 2023, Plaintiff was notified that he had been selected for a reduction in force; he was terminated that day with compensation through July 7, 2023.  *Id.* ¶¶ 258, 263–64.  Plaintiff was one of twelve employees, and one of six within the Engineering Department, selected for the reduction in force.  *Id.* ¶ 259.  Plaintiff alleges that Defendants selected his position for termination ostensibly on the basis of objective seniority metrics, but that he was improperly deemed to be a "junior-level" engineer despite having the title of "Mechanical Engineer."  *Id.* ¶¶ 260–62.  The true purpose of his termination, he alleges, was "to retain non-disabled employees," or, in the alternative, "in order to retain employees who had not made reports of harassment and/or discrimination" or "who had not made reports of unethical and misleading conduct."  *Id.* ¶¶ 265–67.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant

has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

The Court finds that Plaintiff has abandoned his ADA claims (Counts One and Two) and failed to state a claim under Conn. Gen. Stat. § 31-51q (Count Three). Thus, Plaintiff's complaint is dismissed in full.

### A. ADA Discrimination and Retaliation (Counts One and Two)

First, because Plaintiff failed to respond to Defendants' arguments for dismissal of his ADA claims, these claims are deemed abandoned and must be dismissed.

A court may deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed. *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 642–43 (S.D.N.Y. 2008) (collecting cases). Where the abandoning party is represented by counsel and filed a partial opposition to the dispositive motion, dismissal is appropriate. *See Jackson v.*

*Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) (considering abandonment in the summary judgment context and holding that "in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned"); *Fantozzi v. City of New York*, 343 F.R.D. 19, 32 (S.D.N.Y. 2022) (applying *Jackson* in the motion to dismiss context and holding that abandoned claims should be dismissed).

Here, Defendants' motion to dismiss argued that Plaintiff failed to plead a *prima facie* case of discrimination and retaliation in his two ADA claims. *See* ECF No. 16. Plaintiff submitted an opposition to Defendants' motion, but addressed only his claim under Conn. Gen. Stat. § 31-51q, without any defense of his ADA claims. *See generally* ECF No. 17. Given that Plaintiff is represented by counsel and provided a fulsome response to Defendants' arguments on the non-ADA claim, the Court treats Plaintiff's ADA claims as abandoned. *See Jackson*, 766 F.3d at 198. Thus, Plaintiff's ADA claims are dismissed.

B. <u>Conn. Gen. Stat. § 31-51q Retaliation Claim (Count Three)</u>

Next, because Plaintiff has failed to allege sufficient facts to support a finding that his speech was on a matter of public concern, his retaliation claim brought pursuant to Conn. Gen. Stat. § 31-51q is dismissed.

Conn. Gen. Stat. § 31-51q prohibits both public and private employers from disciplining or discharging an employee "on account of . . . the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4, or 14 of article first of the [Connecticut] Constitution." Conn. Gen. Stat. § 31-51q; *Karagozian v. Luxottica Retail N. Am.*, 147 F. Supp. 3d 23, 35 (D. Conn. 2015).[2] To state a claim under § 31-51q, a plaintiff must allege

---

[2] The relevant provision of the Constitution of the State of Connecticut is article first, § 4, which provides that "[e]very citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."

four elements: "(1) that he engaged in constitutionally protected speech, (2) that his employer took an adverse action against him, . . . (3) that there was a ca[us]al relationship between the protected activity and the adverse action," and (4) that "the exercise of his First Amendment rights did not substantially or materially interfere with his bona fide job performance or with his working relationship with his employer." *Karagozian*, 147 F. Supp. 3d at 35 (citing Conn. Gen. Stat. § 31-51q; other citations and internal quotation marks omitted).

At issue in Defendants' motion to dismiss is the first element, requiring that a plaintiff engage in constitutionally protected speech. The Connecticut Supreme Court has noted that although § 31-51q is "a statute that protects constitutional rights in the workplace," it "should not be construed so as to transform every dispute about working conditions into a constitutional question." *Cotto v. United Techs. Corp.*, 251 Conn. 1, 17 (1999). Thus, 31-51q "applies only to expressions regarding public concerns that are motivated by an employee's desire to speak out as a citizen." *Id.*

For speech to be constitutionally protected, it "must address a matter of public concern, and the employee's interest in expressing himself on this matter must not be outweighed by any injury the speech could cause to employee relationships." *Karagozian*, 147 F. Supp. 3d at 36 (citation and internal quotation marks omitted); *see also Urashka v. Griffin Hosp.*, 841 F. Supp. 468, 474 (D. Conn. 1994) ("Section 31-51q, therefore, will afford protection to [a] plaintiff only if the speech for which she was allegedly terminated involved a 'matter of public concern.'"). "Speech that addresses a matter of public concern involves statements that can 'be fairly considered as relating to any matter of political, social, or other concern to the community." *Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 779 (1999) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Whether speech addresses a matter of public concern "depends on its content, its

form, and the context in which it is made." *Id.* at 777. A court may determine, as a matter of law, what topics are matters of public concern, though whether an employee's statements address such a topic is a question of fact. *Id.* at 782.

The Connecticut Supreme Court has clarified that the state constitution and § 31-51q generally protect employee speech that involves a comment on a public or private employer's "'official dishonesty, deliberately unconstitutional action, other serious wrongdoing, or threats to health and safety,'" even when that speech is made pursuant to official duties. *Trusz v. UBS Realty*, 319 Conn. 175, 178, 204 (2015) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 435 (2006) (Souter, J., dissenting)). Such speech is protected because it typically involves "a broader public purpose" that is "of inherent interest to society at large," and is not merely "calculated to redress [the employee's] personal grievances[.]" *Daley*, 249 Conn. at 780 (quoting *Lewis v. Cowen*, 165 F.3d 154, 163–64 (2d Cir. 1999)). For instance, speech addressing safety concerns, violations of law, or corrupt practices will usually rise to the level of public concern needed to state a § 31-51q claim. *See, e.g.*, *Bacewicz v. Molecular Neuroimaging, LLC*, No. 3:17-CV-85 (MPS), 2019 WL 4600227, at *2, *11 (D. Conn. Sept. 23, 2019) (speech relating to "apparent fraud by a contractor working on a federally funded study, including the possibility that it was causing negative health repercussions for the improperly enrolled subjects"); *Brown v. Off. of State Comptroller*, 211 F. Supp. 3d 455, 479 (D. Conn. 2016) (speech concerning allegations of corruption, unethical practices, and violations of state and federal law); *Kennedy v. Coca-Cola Bottling Co. of N.Y., Inc.*, 170 F. Supp. 2d. 294, 299 (D. Conn. 2001) (speech concerning illegal drug use and sales in the workplace was a matter of public concern because it concerned "criminal activity in the workplace and safety issues that would affect the entire workplace and potentially the public"); *DiMartino v. Richens*, 263 Conn. 639, 667 (2003) (speech relating to the security of an airport).

On the other hand, speech relating to the terms and conditions of an employee's employment, the conditions of the employee's own work environment, or the employee's personal grievances against his employer is not considered to be a matter of public concern. *See, e.g.*, *Kottapalli v. ASML US, LP*, No. 3:21-CV-1076 (SVN), 2022 WL 2440174, at *4–5 (D. Conn. July 5, 2022) (speech concerning employer's alleged failure to properly credit plaintiff's work on a patent application and error in submitting his visa renewal paperwork); *Beamon v. Yale New Haven Hosp. Inc.*, No. 3:16-CV-181 (JBA), 2017 WL 969266, at *6 (D. Conn. Mar. 13, 2017) (speech concerning alleged conditions of work environment in a hospital relating only to a single incident); *Ridgeway v. Royal Bank of Scot. Grp.*, No. 3:11-CV-976 (VLB), 2012 WL 1033532, at *16 (D. Conn. Mar. 27, 2012) (speech concerning employer's alleged interference with employee's medical benefits); *Conetta v. Statoil North Am., Inc.*, No. 3:09-CV-444 (AVC), 2010 WL 11586740, at *6 (D. Conn. Mar. 12, 2010) (speech relating to employer's alleged discriminatory practices relating to one employee's pregnancy and family responsibilities); *see also Trusz*, 319 Conn. at 212 ("[s]peech [that] reflects a mere policy difference with the employer . . . is not protected.")

Here, Plaintiff fails to state a claim under § 31-51q because he has not alleged any facts from which the Court could reasonably infer that his workplace speech was on a matter of public concern. In his opposition to Defendant's motion to dismiss, the only speech Plaintiff references as a basis for this claim are his statements regarding McCrate's allegedly "unethical and misleading conduct" in relation to the data relied upon in his presentation. *See* ECF No. 17 at 25. Plaintiff alleges the data he was asked to analyze was "compromised" in such a manner that it would have "affected the validity of the overall analysis," and led to the provision of "inaccurate information." *See* ECF No. 1 ¶¶ 29–32. Even accepting as true Plaintiff's allegation that the data

9

and analysis were dishonest and flawed, he fails to establish how this amounts to a matter of public concern.  While Plaintiff's opposition contends that "misrepresentations about data would be made to the public during a presentation," ECF No. 17 at 25, his complaint states the opposite:  the analysis was conducted "for a presentation at *the company's* Operational Window Project meeting in Bardstown, Kentucky," ECF No. 1 ¶ 26, and could mislead the "*AirSpace team*." *Id.* ¶¶ 36, 40 (emphasis added).  As presently pleaded, the Court cannot find that Plaintiff's speech regarding the flawed data—to be presented at an internal company meeting—rises to the level of a matter of public concern.  Plaintiff's allegation that he "raised matters of public concern when he reported that McCrate was presenting data sets that were intentionally misleading" is conclusory.  *See id.* ¶¶ 300–01.  And even if the allegedly flawed data were to be presented beyond an internal company meeting, the Court cannot infer that it is of public concern, without any additional context regarding the importance of the flaws to the public or society as a whole.

Plaintiff's heavy reliance on *Bacewicz* for the proposition that speaking out about "his mentor's dishonesty" is sufficient to state a claim is misplaced.  ECF No. 17 at 24–25.  In *Bacewicz*, the plaintiff, a neuroimaging technician, raised concerns that her employer's decisions to change an image processing technique in the middle of a clinical drug trial without informing the study's sponsors about the change amounted to research misconduct that could result in harm to patients and compromise the results of a federally funded study.  2019 WL 4600227, at *2, *11.  Here, by contrast, Plaintiff raises no cognizable theory of harm.  Rather, the instant case is more like *Kottapalli*, where the plaintiff's § 31-51-q claim was dismissed because it was "devoid of factual detail linking" allegedly false patent applications "to any public matter."  2022 WL 2440174, at *4.

For these reasons, the Court dismisses Count Three of Plaintiff's complaint. In light of its conclusion that Plaintiff has not adequately pleaded that his speech was on a matter of public concern, the Court does not reach the question of whether Plaintiff has adequately pleaded a causal connection between his complaints about the data analysis and his termination.

## IV. LEAVE TO AMEND

In the event that the Court grants Defendants' motion to dismiss, Plaintiff has requested leave to amend. *See* ECF No. 17 at 26–27. The Court grants Plaintiff leave to amend his § 31-51q claim only.

A court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."). As Plaintiff now has the benefit of the Court's ruling on the motion to dismiss, and because it is possible that Plaintiff could replead his § 31-51q claim with further details concerning whether his speech was on a matter of public concern, the Court will permit Plaintiff leave to file an amended complaint as to that claim only. *See Lorely Financing (Jersey) No. 3. Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190 (2d Cir. 2015). The Court cannot conclude that leave to amend would be futile, on the present record. *See id.* Because Plaintiff failed to defend his ADA claims, however, leave to amend will not be permitted as to those abandoned claims.

## V. CONCLUSION

For the reasons discussed herein, Defendants' motion to dismiss is GRANTED. Plaintiff may file an amended complaint by **September 2, 2025.** If no amended complaint is filed by that date, this case will be closed.

If an amended complaint is timely filed, the parties' Rule 26(f) report shall be due **September 23, 2025**.

**SO ORDERED** at Hartford, Connecticut, this 12th day of August, 2025.

                                      */s/ Sarala V. Nagala*
                                      SARALA V. NAGALA
                                      UNITED STATES DISTRICT JUDGE